Acheron Capital, Ltd. v. Barry Mukamal Ms. Rodriguez. Good morning. Good morning. Julie Rodriguez on behalf of the appellant Acheron Capital, Ltd. Before I address the merits, I wanted to touch base on two points. First, thank you for agreeing to expedite the appeal for your time today. We greatly appreciate it. The second is an update on the motion for stay that we filed in the district court. Did Moreno grant that motion? The sale of Acheron's interests have been stayed pending this court's resolution of this appeal. Yeah, I have real doubts about whether we have jurisdiction here. It seemed to me that if there's an order approving a final sale, it can be stayed, just as you mentioned. There's already been a stay with this instructions order, and we can review everything finally with that order. And for that reason, this isn't a final order. What am I missing? This is very similar to the situation that we had in the 2020 appeal, Your Honor, where it dealt with a discreet post-judgment issue. But this issue, the instructions order can be reviewed as part of that, as part of the order approving a final sale. Yes, so let me start with the proposition of what the motion resolved. The motion that led to the order on appeal addressed what are our rights, Acheron's rights under two sets of contracts. So that now allows, that order allows a trustee to sell all of whole policies, meaning 100% ownership interest in policies in which Acheron owns an interest. That issue cannot be revisited at this point, right? Why? We don't have an order approving a final sale, right? Well, let me draw a distinction. The answer is no, but... Why can't then it be reviewed then, when there is one? I think it becomes a moot issue. Why? Let me explain. Because at that point, the district judge is not going to revisit this particular issue, right? It will if we say so. Well, perhaps. So let me walk through it, if I may. The question isn't whether the district court can, will review it again. The question is whether we can meaningfully review everything that led to that order, that final order approving a sale. Right, at the end of the case, right? At the end of that process, right. And my concern is that at the end of that process, it will be too late, because the sale will have occurred. It can stay, it can be stayed, just as this order was stayed. And perhaps I'm not understanding, Your Honor. You might have to prove substantial likelihood of success and show, you know, all the factors for a stay, but it can be, everything can be meaningfully approved upon the entry of the final order, the order approving a final sale. And I suppose what I'm not fully grasping is the sale isn't going to go forward, right? And if it stayed, then it doesn't go forward, just as the instructions order has been stayed. Correct. But I think that the way that, at least when we're taking our cues from the district court, the way that this is set to play out below is that when we return to the court, right, there will be a sale. Yes, they will. Will there be an order approving the sale, right? There will be an order approving the mechanics of the sale. Right, which could be stayed. Which could be stayed. Yeah, in which case a sale doesn't take place. You've got everything ready to be teed up for a sale, but the sale itself hasn't taken place to moot the appeal, and then we can review everything. Look, I'm not taking issue if we stop short of a sale. The problem that I'm seeing is if we go back to the district court and they tell us that was your shot, you had a shot to overturn this. Yeah, well, let's say we enter an order that says it's not a final order because of just what I've laid out. Then when you go back to the district court, the district court cannot be reasonably told that was your final shot. Understood, and let me add this. Obviously, we've got a response that lays out our position in terms of why we believe this order is, this court has jurisdiction to review the order both under as a final order because it's a discreet issue and for a number of three doctrines in particular. Let me ask you one question before you get to those because I want to make sure I understand. Is there anything else that we could review after an order approving a sale that we cannot review right now? It's hard for me to say because I'm guessing a bit. I haven't seen their motion in terms of what they're going to set out for the next step in the sale process. What I do know now is our rights have been adjudicated under these two sets of contracts. So we know that our interests right now when we go back are scheduled to be sold in an auction. But you have other objections you can still raise before there is a sale, right? Yes. And those could be also adjudicated in addition to the issues you're raising here on an appeal with a stay of a final order approving a sale, right? That is correct. Are there other substantial issues? Yes, there are. Well, let me understand your question. Substantial issues remaining? Yes, that are arguably in dispute such that there will be really other substantive issues on the next appeal along with this one. Again, it's hard for me to say, Your Honor, because we don't know how that is going to be set up, right? So the most important fundamental issue for us are exercising our rights under these contracts. If we go into the sale now, the rest of the issues that I am expecting will come up are, for example, there's going to be an auction. That's a given, right? That's what they've told us. How are they going to set this up, for example, with a brokerage fee? Okay, so we may have an objection to that. But those are what I consider the mechanics of the sale as opposed to our substantive rights because the key here is if we cannot exercise our rights under the asset purchase agreements and the 2015 agreements, everything else is rather small in the scheme of things, right? Because we will lose that interest. And so if I may, and I understand your concern, Chief Judge Pryor, but I would very much like to at least for you to hear in case, you know, as you're sitting here, if there's still some. Yeah, argue what you want to argue. I just wanted you to understand where I was coming from about whether we have jurisdiction. Right. No, understood. I'll end that portion of it with this. If, in fact, it will go a very long way if the order, the decision, could exactly spell that out for the district court because otherwise, meaning that everything, that the sale should be state because otherwise we are going to go back. I wouldn't necessarily say the state. You have to satisfy the requirements of a state, okay? But the point is that, it would seem to me, is that the issues you raise here would be reviewable, too, if there were a final order approving a sale and it were subject to a state just as this instruction order has been state, all of which could be spelled out in an order dismissing this appeal for lack of jurisdiction. It wouldn't adjudicate the rights. It would say, look, you know, it's too early, premature. At the risk of taking more time, but let me add this because it may be important for your consideration on jurisdiction. So one of the things that we've been up against with the other side is they want to do this on a very quick pace, right? So part of the rule also, I fully expect, is when we go back to the district court, it's, well, we're going to wait until we get this next order detailing the actual mechanics of the sale to then go back to the Eleventh Circuit. And we may or may not have additional issues. We will have these issues for certain, right? But you might have other issues. We may. We may. Absolutely, Your Honor. And you could raise those and these. The order approving the sale will say the sale will go forward under these conditions and requirements, period. It will not say the sale that happened yesterday I approve, right? The sale will not have actually occurred by the time you would get an order approving the sale, right? That's my concern. I'm not quite sure how things will play out because there is immense pressure from the other side to make this happen quickly. Right now, they had initially said they wanted to do the sale by the end of this year. They have pushed it to March of 2022. But, again, we have little control over this, right? They are going to present a motion to the district court to approve it. And then we are going to have to act very, very quickly to try to stop that with a stay, whatever else, you know, vehicles that we can. Right, but the approval itself will happen before the sale. It approves the nature of the sale rather than the past occurrence of the sale, right? That is my understanding, yes. Okay. So, with that, and I'm going to rush through this. Bear with me, and I'm sorry, but I do want to address the merits in the event that you have a different thought on jurisdiction. So, as I said, the problem that we have with the order is that it allows for the trustee to sell whole policies. And by that I mean 100% ownership interest in those policies in which we already own an interest. And sometimes it's interest in certain policies that is 90% or 80% of majority interest. We have two contracts on which we base our objections, the asset purchase agreements that I'll refer to as the APAs and the 2015 agreement. The first issue, the way we brief it, because both are two separate contracts with independent issues, is one is what did the trustees sell us, right? That goes to the APA issues. The second is how can the trustees sell those interests, right? And that's the 2015 issue. I'm going to start with that issue first because this court previously dealt with it in the 2020 appeal in SEC versus Mutual Benefits Corporation. Chief Judge Pariah, you were a member of that court. It dealt with a dispute that the parties had over a backup servicing agreement. In that case, the trustee came in trying to raise trust principles to address a contract dispute, and what this court held was you don't have any discretion under that contract, under the 2015 contract, the terms of the contract control, not your power or discretion as trustee. And we find ourselves in a very similar situation now, right? Because what we see from this order is that it allows the trustees' powers and discretion to override the terms of the parties' contracts. So turning first to the 2015. Let me ask this. So the 1887 order, I think it's called, gives pretty broad powers. Are you saying that the trustee and your client, acting with those powers in the background, restricted themselves in certain ways that cannot be overridden by that earlier court order? The 1887 order goes to the APA issue, right? So the dispute there is, does that order allow the resale of Asheron's interests? We say no because under Paragraph 16, this is the most streamlined way that I can get to the nitty-gritty part of this. Under Paragraph 16, it says, subsequent acquirers, which is what we are, right? We purchase our interests from the receiver, ones that obtained and took over as receivership, and the bulk of it we actually got from the trustee, right? The trustee was the receiver transferred all those assets to the trustee to manage as part of the trust. So under Paragraph 16 of Order 1887, we are what they refer to as subsequent acquirers, and subsequent acquirers under that paragraph are not subject to resale. And when I say resale, I'm referring to Paragraph 1C of the 1887. That is the only provision that allows for a sale. So that gets to that issue, Judge Grant. The separate issue on the 2015 agreement actually has nothing to do with that because whether you agree with us on the APA issue or not, we have special rights under the 2015 agreement that we are entitled to enforce. And I see that my time is up. I preserved two minutes for rebuttal, so I will be back to address. Thank you, Ms. Rodriguez. Mr. Orishia? It's amazing what we've gotten. I know. I'm not sure what purpose those things serve, but, you know, we've made the best decisions we can along the way. I'm going to challenge it. May it please the Court. My name is John Orishia, and I represent the trustee, Barry McConnell. First off, good morning. It's good to be here. Let me address the questions that were raised by the Court. First, in absolute candor, I would love this appeal to go forward because a judgment, an order affirming the order below would pave the way for institutional investors to bid on these policies. But in all candor, there is no jurisdiction. There's none whatsoever. I can assure you there was a question,  I can tell you in my three years in this litigation, everything will be disputed. But let me tell you what we would envision in the course of the sale. Do I have it right, though, that so there are other issues still to be litigated before there's a final order approving a sale? Absolutely. It could be stayed, and all issues, including the ones before us, in the event there is a stay. Obviously, if a sale takes place, it might moot a lot of issues. It might be difficult to unwind it. But just as this order has been stayed, that order could be stayed, and everything, including the issues before us, could be effectively reviewed. Absolutely. This is no different than a bankruptcy case in which sometimes the confirmation is stayed because you can't unscramble the egg. This is a little different, though. And I would be concerned about a stay if I were Asheron because this is a contract issue. This is an irreparable harm. If irreparable harm becomes an element necessary to sustain a stay, this is a classic contract case. This is nothing more and nothing less. So in this case, Judge Moreno issued the stay, and for a good part, and when you looked at his stay order, he said, nothing's going to happen for a while. And I noticed that the 11th Circuit has also already graciously agreed to expedite the appeals, so there's no harm and no foul. And you'll note the trustee didn't challenge that because it doesn't impact the victims of the trust and the trust beneficiaries. But let me just lay it out. There's going to be a motion. Everything is going to be done. We don't know what it will look like because everything will be done by motion and court order. There'll be a motion to approve the bid procedures. That's going to include objections by investors. What's the purchase and sale agreement going to look like? What are the bid qualifications? What's a qualified bid? How conducted? We anticipate another motion, the motion to approve a stocking horse. Another one, a motion to approve the auction sale result, the high bidder. So we have, that's the third motion. And then a fourth motion, which is the motion to approve allocation and proceeds. And the one thing that we haven't addressed is, even so, even with all of that, if Asheron could come in, maybe there's no other bidder. Maybe it's the bidder. Maybe it buys all the interests, not just those in which it has an interest already. And that's the reason that I would submit there can't be jurisdiction. This is classic piecemeal. This is just looking at every leaf on a tree instead of the tree as a whole. And I really don't think that that comports with the jurisdiction of this court. Nonetheless, as I said, on behalf of my client, and I am an advocate, I would love to have the order affirming this because it will pave the way for institutional investors. Let me turn to the substance briefly. As much as you like that, you can see that that's not the test for finality. No, it's not. Me wanting something really doesn't get me a lot in this world. Piecemeal litigation might be great for those who can get it, right? But I do want to tell you that my position with respect to jurisdiction is contrary to my client's interests. It truly is what I believe as a lawyer and not just an advocate. There's one Supreme Court case that suggests we might have jurisdiction. It's Dickerson v. Petroleum Conversion Corporation. And there the Supreme Court says, quote, in deciding the question of finality, the most important competing considerations are the inconvenience and cost of piecemeal review on the one hand and the danger of denying justice by delay on the other. And what you just said suggests that that balance might possibly, in this case, tilt toward accepting jurisdiction. What you're suggesting is clear that if a bulk sale occurs, then the arguable that we talk about when we get to the merits right of Asheron to bid policy by policy, if there's a sale in bulk, that will be lost. And the question is whether or not there really can be a stay of that because it's a contract right, as you're talking about, that usually is remediated by money damages. The problem for a stay will be that its damages cannot be measured and have to prove irreparable injury. I guess if its damages cannot be measured, then there might be irreparable injury. But that's a close call. And what you just said, the district judge is not likely to grant a stay in the future. So that could be an argument for immediate jurisdiction now. I'm not going to press that because I would like to go ahead and get to the merits. And let me start off by, I think Asheron has a real good argument based on the 2015 agreement. And I'm not sure they have really argued it as clearly as they might, and so I'm educating them right now too. It seems to me that the phrase, and I'm quoting, a policy in which Asheron owns an interest, that phrase appears both in the first sentence of the crucial paragraph four and in the second sentence. In the first sentence, it clearly means policy by policy, a particular policy, because it talks about Asheron owns a fractional interest in a policy, and they have the right under the first sentence to buy up the rest of the interest in that particular one policy. So when the second sentence uses that very same phrase, then that right in the second sentence to bid on a policy might well most plausibly be construed to mean each policy, in other words, policy by policy. How do you respond to that? Well, let me answer that question directly. First of all, with respect to the jurisdiction, the argument that you made, the position that you made, that to me would indicate it would be appropriate no earlier than the motion to approve bid procedures. That would be the appropriate time for an appeal. With respect to section four, section four of the March 15 agreement is very interesting. Asheron conflates the language. They say they have, in the last sentence, a right to bid, right, with a right to top the bid. That's the way they read it, as if it's one right. Those are two different rights, as is signified by the word and. I agree with you on the last bid, the top the bid. Don't talk about that. Talk about the first. I want to talk about the first, because that's what you asked me about, and I'd like to be direct. There is no doubt, no dispute from the trustee that before everything is sold, before there's a trust liquidation, Asheron Capital, if it owns an interest in a policy, it can make a bid. It can say, I want to buy one policy, I want to buy half of the policies in which I have an interest. It can make all of it. It would be akin to a private sale. What that language does is it provides them with an opportunity to complete, potentially, a private sale before a liquidation, if, of course, the bid is good enough. It gives them also, by making a bid, it gives them the opportunity, potentially, to become a stalking horse, which is a valuable right. That creates the landscape. The stalking horse is what establishes the bid procedures and the bid policies, and most importantly, that's a very valuable right, because it ensures that the policies can't be sold without giving Asheron a chance. It can't wake up one day and say, gee whiz, they sold out the policies out from under me. So you agree with me that in the first sentence, they clearly have a right to bid on a particular one single policy. Why does not the same language in the second sentence mean the same thing? I thought that I just said that with respect to the bid that it's allowed to make before the trust liquidation, it's allowed to. They can do whatever they want. It's their bid. They can bid on whatever they want. So let me make sure I understand. Let's say there are 100 policies, and Asheron wants to individually place a pre-bid on 50 of those, right? So they can do that in spite of the trustee's intention and desire to sell all of those policies as a group. Asheron can at least attempt to pull those 50 policies out of that group sale? Absolutely. They can absolutely attempt to do that. But can't the trustee also say, well, thanks for your bid, but no, I'm going to sell, instead of selling the rest of the 50, I'm going to sell all 100? It could. He could. So how meaningful is that right in that case? It depends a lot on the price and what those are. For example, if they cherry pick and they say these are the most valuable policies and we'd like to give you 3% on the face value, the trustee might say no, but I don't know. This is a hypothetical that I don't have the answer to. Or Asheron could say I want to bid on all of them. It has the right to bid whatever it wants. And it might actually be satisfied later with how it unfolds. It could be. But isn't that right only meaningful if all of the policies have to be sold individually? I don't think so. I think that what it does is it gives them flexibility. It gives Asheron flexibility. There is no flexibility if the trustee decides I'm going to sell them all. I'm going to sell all of the policies. Therefore, you, Asheron, if you want to bid on, you can't bid on any one policy. You've got to bid on the whole group. Well, there are two different things. One is the right to bid before any sale. Are you telling me that there cannot be a bulk sale without first giving Asheron an opportunity to buy any one or more of the policies in which it already has an interest? To make whatever bid that it wants. And this is exactly what's happened with the interim distributions. They were always given an opportunity to purchase. And all it is is an opportunity. But if I might, I'd like to tell you another very important aspect about the March 2015 agreement. The one problem, the trustee doesn't have to accept that bid. No, he does not. And with any other contract, this is just to provide an opportunity. If they wanted to make more, they would. Might get a better bid. Might get a better bid for all the policies, right? As a group. But maybe not. Maybe you'll take their bids. Right? All things that need to be decided. All of which could be subject to a final order of approving a sale, right? Correct. But one last thing about the March 2015 agreement that is critical. It proves that in the purchase agreements, Asheron knew, those parties knew that they were buying subject to 1888, Judge Moreno's order, the future administration order that allowed for the sale. Why did they know that? Because you would not come back years later in the March 2015 agreement and negotiate, what are my rights? What are my rights going to be upon trust termination if you did not know that Order 1888, which was an encumbrance, they took these fractional interests with that order, permitted the trustee to sell whole policies upon trust termination. And another order that was approved by the court, the trust agreement, allowed the trustee to sell at trust termination. If Asheron Capital did not realize and did not believe that the trustee had those rights pursuant to Judge Moreno's order, they wouldn't have negotiated the 2015 agreement. They wouldn't have negotiated that last sentence. They wouldn't have spilled all that ink to get to that point if they thought, as they contend now, that Asheron, that the trustee could never sell a fractional interest, that they own it forever. I'll ask you one question. It goes back to jurisdiction. And that is, in the event that there was a stay motion of a final order approving a sale, of course, there could be debates about the likelihood of success. But it would seem to me the irreparable injury question that Judge Anderson asked about is pretty easily satisfied if there is a likelihood of success. And that is because if you don't stay it, then there are going to be issues effectively mooted by the occurrence of the sale. That happens every day in bankruptcy. But irreparable injury won't be the issue. That issue is going to be likelihood of success. I think that is a very fair point. I've got one more question, if I may. It may not turn out to matter, but how could top any bid just mean participate in the bidding process? You talked about spilling ink. Why would the parties have spilled ink on that if it simply means participate in an auction? Because options aren't just, hey, everybody show up, you could come in. There's qualified options. There's also the potential and perhaps the fear. I wasn't in the room when it was drafted. But you can exclude people from an auction. This is an opportunity to not just participate in an auction, but actually to submit a winning bid. There could have been other language that could have been used, but it is the language that is used. Also, the auction is not inconsistent with what happened previously when they had the whole keep policy and the sale policies back in, I think, 2009, which was also in 1887. It could have said other things, but equally, if they wanted what Asheron says, it would be a post-auction last look, which again would make no sense because it would chill all the bidding. No fiduciary would have ever agreed to that. It would have been inimical to the interest of the mutual benefits victims. I hope that was helpful. Thank you. We understand your case. Ms. Rodriguez, you've got two minutes. With the two minutes, let me go very quickly and focus in on the 2015 agreement because I do think you've hit it on the nail on the head, Judge Anderson. Under that agreement, again, regardless of what you decide, under the APA, we have the right, by virtue of the fact that it is undisputed, we own 60% of the holdings in the trust. It triggers Section 4, and under Section 4, for that provision that you read to have any meaning, any practical meaning, we need to be able to bid on a policy-by-policy basis. Their interpretation, and I'm going to go through one of the scenarios that they've played out for us, but their interpretation forces Asheron to bid on everything in order to protect— He says you have an opportunity before that auction on everything, you have an opportunity to buy up one or more of the policies that you already have an interest in, buy up all the rest of it. Why is that not enough? Okay, so I don't think he finished his thought there because we've been fighting about, that's what we've been fighting about below all along, that we want to do exactly that, right? And they have told us no, that it's going to be an auction, it's going to be open to everyone, and that we can bid, right? But they can readily deny it, which was your point, Judge Grant. Right, so it becomes a meaningless right. Well, it seems to me maybe this is what you're trying to say. You can make a bid before the auction, but you're not bidding against anybody else in order to get the bid accepted. You would have to pay five times more than it's worth, let's say, than to ensure that rather than having an opportunity to bid against other people and gauge the amount you're bidding by what other people think the value is also. You can answer. Look, what they proposed and what the district court agreed that they could do was conduct an auction, which by the way is not mentioned anywhere in the 2015 agreement because that's not something we had to bargain for. We had to spend seven years buying from them, spending millions of dollars by the time we entered into the 2015 agreement. So when they talk about us being able to pre-liquidation make a bid, I don't think they're talking outside of an auction necessarily because that's all they have been proposing up until now. That has been their hard stance, that we cannot come in with a bid that they will accept, basically. They won't. And on the right-to-top bid, they force us to be part of the bidding process and just say, you have that right as any participant would in an auction. Well, that does us no good because we're just in a bidding war. The very term top, which addresses the question that we had earlier, Judge Grant, was you look at the definition. It's simply put yourself on top of that highest bid and end the sale because otherwise, again, we're just bidding with everybody else and we are not in a position to do so. The whole purpose of Section 4, and this is the one thing that we all agree on, was to protect Asheron's existing ownership interest. We cannot do that unless there is a mechanism for us to do it policy by policy. If the only offer that is being made to us is have a portfolio sale and good luck bidding and outbidding the third buyer that's coming in bidding on the entire portfolio, what are the chances that our bids are ever going to make a difference there? No. So we have to bid on everything to protect the share that we already own, and that was not the bargain. Thank you. We have your case and we'll be in recess until tomorrow. All rise.